IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AARON BEYER, et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | NO. 14-4887 |
| **STATE FARM FIRE AND** | : | |
| **CASUALTY CO.** | : | |

**MEMORANDUM**

**KEARNEY, J.**                                                                                   **JULY 20, 2015**

      A property insurance policy for a beach home is a negotiated document through which the insurer, competing against other insurers, will cover certain losses based on its risk assessment. After a loss, repeated negotiations and supplemental insurance payments against the backdrop of disputed claims is often part of the insurance recovery process. The insurer is entitled to dispute coverage for items it believes are not covered so long as its positions are fairly debatable and the insured may challenge such determinations. This process is part of many litigated property loss claims. An insurer timely negotiating but refusing to budge from a position it believes to have merit is not bad faith. Here, the parties disagree as to coverage, submission to appraisal and producing a report. Plaintiffs claim the insurer breached their contract in failing to tender payments. In the accompanying Order, we grant the insurer's motion for partial summary judgment on the insured's bad faith claim in Count II of the Complaint as there are no genuine issues of material fact the insurer did not act in bad faith under applicable New Jersey law.

I.  **FACTUAL BACKGROUND**

Pennsylvania residents Aaron and Francine Beyer (the "Beyers") own a vacation property located at 3212 Ventnor Avenue, Longport, New Jersey (the "Property"). (ECF Doc. No. 25, Def.'s Statement of Undisputed Facts ("SOF"), ¶ 5.) Defendant State Farm Fire and Casualty Company ("State Farm") issued insurance policy 30-CQ-5754-3 (the "Policy") insuring the Property. (*Id.* ¶ 7.) The Policy has a dwelling coverage limit of $275,600, as well as a personal property coverage limit of $206,700. (*Id.* ¶ 8.)

On January 12, 2014, a burst water pipe caused damage to the Property. (*Id.* ¶¶ 5-6.) In accordance with the Policy, the Beyers notified State Farm of the accident and resulting damage. (*Id.* ¶ 16.) State Farm's claim representative preliminarily inspected the Property and damage on January 14, 2014. (*Id.* ¶ 17.) State Farm then assigned the claim to independent adjustment agency E.A. Renfroe and its adjuster Robert Bullard ("Bullard"). (*Id.* ¶ 18.)

Bullard inspected and photographed the Property on February 1, 2014. (*Id.* ¶ 18.) At his inspection, Bullard noted all "affected drywall, baseboards, carpet pad, and carpet had been removed by a water mitigation service." (*Id.* ¶ 19.) Bullard's notes further indicate areas suffering damage: 1) kitchen drywall; 2) lower cabinets and tile flooring; 3) the living room drywall, baseboards and tile floor; 4) the laundry room casing and tile flooring; the hallway drywall, casing and tile flooring; 5) the first floor bedroom baseboards, plaster, carpet pad and carpet; and 6) the first floor bathroom vanity and floor. (*Id.* ¶ 20.) On February 10, 2014, Bullard prepared an estimate of damages based on his Property inspection and calculated a replacement cost value ("RCV") of $18,391.01. (*Id.* ¶ 21.) Bullard then issued a $16,140.63 check representing the actual cash value ("ACV"), or RCV minus $2,250.38 of depreciation. (*Id.*)

On March 18, 2014, the Beyers' public adjuster, Interstate Public Adjusters ("Interstate") forwarded State Farm an invoice from Matera Builders Incorporated ("Matera"). (*Id.* ¶ 22.) Matera's invoice totaled $166,799.71 and included "several areas and items of repair which were not observed to have damage" at Bullard's February 1 inspection. (*Id.*)  Specifically, Matera's invoice included a "gut of second floor bathroom and replacement of shower tile and floor in first floor bathroom, as well as replacement of an allegedly water damaged sagging header in the dining room." (*Id.*)  The Beyers' public adjuster also requested State Farm assign a new independent adjuster to the case. (*Id.* ¶ 23.)  State Farm complied and assigned Larry Wayne Jones ("Jones") of Pilot Catastrophe Services to the Beyers' claim. (*Id.*)

Jones re-inspected the property on March 26, 2014. (*Id.* ¶ 24.)  Jones observed Matera had removed all ceiling and rear drywall in the living room, completely "gutted" the dining room and kitchen, "cut the right wall of the hall at the dining room four feet into hall", and completely renovated "rear left bathroom" where no damage was observed at previous inspections. (*Id.* ¶ 25.)  Jones prepared a revised estimate of damages with a RCV of $25,324.48 and ACV of $22,956.52. (*Id.* ¶ 24.)  Jones also calculated an allowance for "water mitigation" of $7,513.55. (*Id.*)  Jones issued a supplemental payment to the Beyers of $14,329.44.[1] (*Id.*)

Again, at the request of the Beyers' counsel, State Farm's Joseph Luneman ("Luneman") inspected the property on May 2, 2014. (*Id.* ¶ 26.)  In addition, State Farm retained Chuck Vinores ("Vinores") to inspect the Property. (*Id.* ¶27.)  After inspecting the Property, Vinores prepared a report (the "Vinores report").  Vinores specifically inspected the damaged header and was unable to determine the cause because the Beyers directed repairs prior to the inspection

---

[1] This amount represents the difference between the ACV calculated by Jones and the ACV calculated by Bullard. This figure ($6,815.89) plus the water mitigation allowance ($7,513.55) is equal to $14,329.44.

without retaining the damaged materials.  (*Id.* ¶ 28.)  Based on both his own inspection, as well as the Vinores report, Luneman prepared a "revised estimate of damages" with a RCV of $41,763.69 and an ACV of $38,847.  (*Id.* ¶ 29.)  Luneman, just as Jones had done, calculated a water mitigation allowance of $7,513.55.  (*Id.* ¶ 29.)  Luneman ultimately issued a $15,891.17 check representing the difference between the ACV calculated by Jones and the ACV calculated by Luneman.  (*Id.*)

State Farm made additional payments to the Beyers.  After his inspection and upon review of the Vinores report, Luneman calculated an estimate for damaged contents with an RCV of $24,045.55 and an ACV of $13,633.33.  (*Id.* ¶ 30.)  Luneman issued the Beyers a check for $13,633.33.  (*Id.*)  Further, after the Beyers submitted documents under the Policy, State Farm released $7,054.70 of the additional contents replacement costs calculated by Luneman.  (*Id.* ¶ 31.)  Lastly, after the Beyers submitted more documents, State Farm released "the full amount of the additional structural replacement cost benefits totaling $2,916."  (*Id.* ¶ 32.)

The Beyers filed suit against State Farm in Pennsylvania state court claiming damages for breach of contract and bad faith.  State Farm removed the case and following discovery moves for summary judgment on the bad faith claim.

## II.  ANALYSIS

State Farm argues it is entitled to summary judgment on the bad faith claim.[2]  State Farm argues the underlying breach of contract claim is "fairly debatable" and as such the Beyers

---

[2] Summary judgment may only be granted where "the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Burton v. Teleflex*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). To defeat a motion for summary judgment, however, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Burton*, 707 F.3d at 425 (quoting *Jakimas v.*

cannot sustain a bad faith claim. State Farm cites the timeline showing it acted "reasonably, promptly, and properly" in adjusting the Beyers' claim and made payments based on the multiple Property inspections and the Vinores report. (ECF Doc. No. 25, Def.'s Mot. for Summ. J., 18-20.) The Beyers seemingly concede State Farm adjusted the claim in good faith as they offer no argument in response concerning the underlying claim.³ Instead, the Beyers argue State Farm breached its duty of good faith and fair dealing by 1) failing to submit the claim to appraisal after the Beyers requested it do so; and 2) unreasonably delaying the production of the Vinores report. (ECF Doc. No. 30, Def.'s Resp. in Opp. to Summ. J., 9.)

Unlike Pennsylvania, New Jersey does not have a statutory remedy for an insurer's bad faith practices.⁴ 42 Pa. Con. Stat. § 8371; *Paul Revere Life Ins. Co. v. Patniak*, No. 02-3423, 2004 WL 1059805, *2 (D.N.J. Apr. 4, 2004) (comparing Pennsylvania and New Jersey insurance bad faith remedies). Rather, New Jersey recognizes a common law cause of action in tort by implying a duty of good faith and fair dealing in all contracts, including insurance policies. *Pickett v. Lloyds*, 621 A.2d 445, 450 (N.J. 1993).

In *Pickett*, the New Jersey Supreme Court developed the standard applied to insurance bad faith claims: the "fairly debatable standard." *Id.* at 453-54. "If a claim is fairly debatable, no liability in tort will arise." *Id.* at 453. Under this standard, "a claimant who could not have

---

*Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (alteration in original)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

³ " 'Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant.' " *Walker v. Centocor Ortho Biotech, Inc.*, No. 11-4917, 2013 WL 664204, *4 (E.D. Pa. Feb. 25, 2013) (granting summary judgment on claim unaddressed in opposition motion) (quoting *Markert v. PNC Fin. Servs. Grp.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011)). Thus, the Court is well within its discretion to grant summary judgment on the Beyers' bad faith claim as uncontested. However, in light of Federal Rule of Civil Procedure 56(e)(3), and this Court's preference for resolving matters on their merits, we fully address the claim.

⁴ The parties agree New Jersey law applies.

established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim." *Id.* at 454. Thus, to establish a bad faith claim under New Jersey law, a plaintiff must show " '(1) the insurer lacked a fairly debatable reason for its failure to pay a claim; and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim.' " *151 East Leaming Ave. Condo Ass'n v. QBE Speciality Ins. Co.*, No 14-175, 2013 WL 3795648, *6 (D.N.J. June 18, 2015) (quoting *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004)).

    **A. State Farm's handling of the claim.**

Initially, we find factual issues exist as to the underlying breach of contract claim, which preclude a finding of bad faith against State Farm for failing to pay the sums claimed by the Beyers. State Farm paid a portion of the total amount of loss alleged by the Beyers. (Def.'s SOF, ¶¶ 21, 25, 29, 30, 31, 32.) It paid this portion after multiple Property inspections including two requested by the Beyers' adjustor or counsel. (*Id.* ¶¶ 23, 26.) After each inspection, State Farm issued payment or supplemental payment to the Beyers. (*Id.* ¶¶ 21, 24, 29, 30-32.) State Farm ultimately paid the Beyers approximately $68,000 in insurance proceeds for Property damage.

The Beyers, however, submitted Matera's invoice for his renovations to the Property totaling $166,799.71. (*Id.* ¶ 22; Summ. J. App., 293-316.) State Farm challenges this amount. State Farm argues Matera performed renovations to areas of the Property which were not damaged at all, or did not require complete "gutting" and renovation and instead could have been repaired with less costly measures. Specifically, State Farm points to "upgraded and custom cabinetry, countertops, and tile work throughout the first floor." (Def.'s Mot. for Summ. J., 21.)

Also, State Farm contests the "complete $72,368.00 renovation of the second floor master bathroom." (*Id.*)  State Farm argues these upgrades and complete renovations do not fall within the Policy scope as it provides State Farm "will pay the cost to repair or replace the damaged part of the Property with *similar construction*." (*Id.*) (emphasis in original)  Further, State Farm argues Beyers' public adjustor, Interstate, produced a February 26, 2014 invoice estimating the Property damage at $66,753.73.  (Summ. J. App., 392.)  Interstate also produced an undated estimate for $122,434.82.  (*Id.* at 402.)  Interstate provided this undated estimate to the Beyers' counsel on August 4, 2014 almost two weeks after the Beyers filed this suit. (*Id.* at 401-09; Def. SOF, ¶ 1.)

Given these facts not disputed by the Beyers, we find State Farm had a "fairly debatable" basis for denying a portion of the Beyers' claim.  State Farm inspected the Property multiple times and made what it considered to be appropriate payments each time.  Further, State Farm believed many of Matera's renovations constituted upgrades in finishes rather than "similar construction."  In addition, there are various accounts of the repairs made, the cost of such repairs, and the necessity of the repairs, which give rise to material issues of disputed fact.  *See Ketzner*, 118 F. App'x at 599 (noting competing medical reports created material issues of disputed fact preventing summary judgment).

Given State Farm's position based on documents submitted to the Court, there is a factual issue as to whether the Beyers are entitled to further insurance proceeds under the Policy.  *See Onex Credit Partners, LLC v. Atrium 5 Ltd.*, No. 13-5629, 2014 WL 4798758, *8-9 (D.N.J. Sept. 26, 2014) (granting summary judgment where plaintiff challenged "reasonableness of Defendant's coverage position and its purported reliance on third party consultants"); *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401-02 (D.N.J. 2000) (dismissing bad-faith claim where

factual issue existed as to underlying claim).  As the Beyers cannot show "the absence of a reasonable basis for denying benefits", summary judgment is granted in favor of State Farm on the Beyers' claim of bad faith in the adjusting of their underlying claim.  *Pickett*, 621 A.2d at 453.

### B.  State Farm's refusal to submit the claim to appraisal.

As noted above, rather than responding to State Farm's arguments on its handling of the claim, the Beyers argue State Farm engaged in bad faith by failing to submit the claim to appraisal at the Beyers' request and in delaying production of the Vinores report.  We find State Farm is entitled to summary judgment on both of these arguments.

State Farm is entitled to summary judgment on the bad faith claim regarding the appraisal requests.  In support of their argument, the Beyers cite to cases applying Pennsylvania law on appraisal.[5]  (ECF Doc. No. 30, Pls.' Opp., 11-12.)  We find these cases to be inapposite as they were decided under Pennsylvania law.  First, neither party contests New Jersey law is applicable to the Beyers' bad faith claim.  A comparison of New Jersey's bad faith law with Pennsylvania's reveals different standards in each jurisdiction.  *See Paul Revere*, 2004 WL 1059805, *3.  In fact, New Jersey expressly rejected the Pennsylvania bad faith standard as it "does not 'adequately serve[] the public interest.'"  *Id.* (quoting *Pickett*, 621 A.2d at 473).  Pennsylvania's bad faith statute requires conduct that " 'import[s] a dishonest purpose.' "  *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012) (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super Ct. 2004)).  There is no such showing necessary under New Jersey law.  Rather, the claim must be "fairly debatable" and to avoid summary judgment a plaintiff must "have

---

[5]  *See Ice City, Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236 (Pa. 1974); *Currie v. State Farm Fire and Cas. Co.*, No. 13-6713, 2014 WL 4081051, *1 (E.D. Pa. Aug. 19, 2014); *Grigos v. Certain Underwriters at Lloyds, London*, 2010 Phila. Ct. Com. Pl. LEXIS 383 (Pa. C.P. 2010).

established as a matter of law a right to summary judgment on the substantive claim." *Pickett*, 621 A.2d at 454. "Neither negligence nor mistake is sufficient to show bad faith." *Id.*

We find State Farm had a fairly debatable basis for denying the appraisal request, which it did multiple times. The Policy provides, "If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal." (Summ. J. App., 198) On July 9, 2014, State Farm informed Beyers' counsel of rejecting his appraisal request because "the additional damage being claimed by Mr. and Mrs. Beyer was not related to the water loss associated with this claim." (*Id.* at 461.) State Farm determined the Policy did not cover claimed damage and thus excluded from consideration. We find this to be a "fairly debatable" basis for denying the appraisal request. We grant summary judgment on the Beyers' bad faith refusal to go to appraisal claim.[6]

### C. State Farm's delay in producing the Vinores report.

Summary Judgment for State Farm is warranted as to the delay in production of the Vinores report. "A plaintiff establishes bad faith for a processing delay when the insurer unreasonably delays the processing of a valid claim, and the insurer knows or recklessly disregards the fact that the delay is unreasonable." *Johnson v. Liberty Mut. Ins. Co.*, No. 10-494, 2010 WL 2560489, *2 (D.N.J. June 24, 2010) (internal quotations omitted). "Although applied in slightly different circumstances, the fairly debatable and unreasonable delay tests are essentially the same." *Onex Credit Partners*, 2014 WL 4798758, *8 (internal quotations omitted).

---

[6]  The *Currie* case, which admittedly has a similar factual scenario to the instant case, relied on by the Beyers does not militate a different outcome. Judge O'Neill based his denial of summary judgment on the plaintiff's bad faith refusal to go to appraisal on Pennsylvania law, which as noted above differs from New Jersey's. *See Currie*, 2014 WL 4081051, *4-5. Given this difference, *Currie* does not compel us to deny summary judgment in this instance.

The Beyers only argue State Farm breached its duty of good faith and fair dealing "by failing to provide Beyer with a copy of its expert report within a reasonable time." (Pls.' Opp., 9.) Beyers cited their counsel's letters requesting the report be produced. (Summ. J. App., 466-69.) Their letters demonstrate, beginning on September 18, 2014, the Beyers' counsel requested the report from State Farm at monthly intervals. (*Id.*) State Farm, through their current counsel, ultimately produced the Vinores report on December 23, 2014. (Summ. J. App., 470.) Ten weeks elapsed from the first documented request on September 18, 2014 to the production date on December 23, 2014.[7]

Further, the Beyers started this case on July 23, 2014, almost two months before their counsel's first request. (Def.'s SOF, ¶ 1.) Moreover, State Farm filed a motion to dismiss or in the alternative transfer on August 28, 2014. (ECF Doc. No. 4) Thus, State Farm processed the claim, State Farm denied the portion of the claim now at issue, and the Beyers chose to file suit to establish their right to the disputed portion of the claim. Any delay in producing the report did not "delay processing the claim" as the Beyers already prosecuted the claim in litigation before its counsel's September 18, 2014 request. After the Beyers filed suit, the Vinores report became discoverable subject to the applicable rules of civil procedure. We do not find any bad faith on State Farm's part in this regard.

### III. CONCLUSION

We grant summary judgment in favor of State Farm on Beyers' bad faith claim. State Farm inspected the Property multiple times in an approximate five month period and made payments to the Beyers in accordance with the findings of each inspection. State Farm

---

[7] We note the September 18, 2014 letter from the Beyers' counsel states he is "again requesting" the Vinores report. (Summ. J. App., 466.) We also note that none of the earlier correspondence attached by the Beyers contain any request for the Vinores report from their counsel. (*Id.* at 457-65.)

determined the additional damage did not relate to the frozen water pipe damage and State Farm argues further payments are excluded from the Policy's coverage. We find State Farm raises a "fairly debatable" basis for denying the disputed portion of the Beyers' claim. Further, we find State Farm had a "fairly debatable" basis for rejecting the Beyers' appraisal request, as well as a delay in producing the Vinores report after the Beyers sued it. Accordingly, we grant summary judgment in State Farm's favor on the bad faith claim in the accompanying Order.